U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 1 7 2016

CLERK, U.S. DISTRICT COURT
By _____
          Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CURTIS R. MOFFETT JR.,               §
                                     §
            Petitioner,              §
                                     §
v.                                   §        No. 4:14-CV-396-A
                                     §
WILLIAM STEPHENS, Director,          §
Texas Department of Criminal         §
Justice, Correctional                §
Institutions Division,               §
                                     §
            Respondent.              §

**MEMORANDUM OPINION**
**and**
**ORDER**

This is a petition for writ of habeas corpus pursuant to 28
U.S.C. § 2254 filed by petitioner, Curtis R. Moffett Jr., a state
prisoner confined in the Correctional Institutions Division of
the Texas Department of Criminal Justice (TDCJ), against William
Stephens, Director of TDCJ, Respondent. After having considered
the pleadings, state court records, and relief sought by
petitioner, the court has concluded that the petition should be
denied.

**I.  Procedural History**

In a multi-count indictment, petitioner was charged in
Tarrant County, Texas, with capital murder, murder, solicitation
of capital murder, and unlawful possession of a firearm by a

felon. Clerk's R. 2, ECF No. 11-14. The state appellate court set
out the factual background of the case as follows:

> On December 4, 2005, sometime after 12:00 a.m.,
> Pauline Choice was asleep at her mother's house when
> she was awakened by appellant, Choice's cousin,
> knocking on the front door of the house. Appellant was
> upset and told Choice that $35,000 was missing from his
> apartment. Appellant then accused Choice, Kevin
> Jackson, and Dwayne Gratts of taking the money.
> According to Choice, appellant pointed a chrome handgun
> that he had with him at her.
>
> Appellant then drove Choice to his apartment and
> had her make a police report about the burglary. Choice
> did not tell the police that anything was missing from
> the apartment. After making the police report,
> appellant, Choice, and appellant's girlfriend and baby
> drove to Jackson's house so that appellant could get
> his money back. After nobody answered the door, they
> drove back to Choice's mother's house.
>
> Later that day, Choice went back to the apartment
> with appellant. Roderick Young was also there.
> Appellant then counted out $10,000 and handed it to
> Choice to recount. After recounting the money, Choice
> handed it back to appellant who gave it to Young.
> Choice testified that appellant gave the money to Young
> to kill Dwayne.
>
> After learning from Choice that appellant wanted
> to talk to him about the missing money, Dwayne called
> appellant and told him to meet him at his mother's
> house. Appellant stated that he was in the middle of
> something, but that he would come over.
>
> That night, at approximately 11:00 p.m., Dwayne,
> his brother, Earl Gratts, and a friend, Lavord
> McDonald, were sitting in Dwayne's car outside Dwayne's
> mother's house waiting for appellant when they noticed
> a car parked down the street with its headlights on.
> Dwayne testified that shortly after the car drove away,

a man approached the house and asked Dwayne, Earl, and Lavord if they had any weed. After answering "no" and telling the man to "just move on," Dwayne stated that the man began to walk up the street.

At that time, Earl got out of the car to see who the man was. Dwayne stated that after the man and Earl talked for approximately two-to-three minutes, the man pulled out a gun and began shooting at Earl. Earl later died from the gunshot wounds. Both appellant and Young were arrested for the murder.

On June 22, 2007, a jury found appellant guilty of murder, solicitation of capital murder, and felon in possession of a firearm. On July 6, 2007, after finding the habitual offender notice to be true, the trial judge sentenced appellant to life imprisonment for each count, to run concurrently.

Mem. Op. 2-4 (footnotes omitted).[1]

On direct appeal, the appellate court affirmed the trial court's judgment, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review, and the United States Supreme Court denied writ of certiorari. *Id.* at 13; Docket Sheet, ECF No. 11-2; *Moffett v. Texas,* 558 U.S. 950 (2009). Petitioner also filed three postconviction state habeas applications, one for each conviction. The first two were denied by the Texas Court of Criminal Appeals on the findings of the trial court without written order and the third was denied without written order. "Action Taken," ECF Nos. 12-2, 12-5 & 12-

---

[1] The jury acquitted petitioner of capita murder.

3

8. This federal petition for habeas relief followed.

## II.  Issues

In ten grounds, petitioner raises the following claims:

(1)  His right to due process and a fair trial was violated by the trial judge's harsh sentence;

(2)  His right to due process and a fair trial was violated by the prosecutor's bolstering of a witness's credibility during closing argument;

(3) His right to due process and a fair trial was violated by the prosecutor's knowing use of perjured testimony and his trial counsel's failure to object;

(4), (6), (7), (8) and (9)  He was denied effective assistance of counsel at trial;

(5)  His right to due process and a fair trial was violated because there was no evidence that he intentionally or knowingly caused the death of Earl Gratts for remuneration or promise of remuneration; and

(10)  His right to due process and a fair trial was violated by the introduction of witness testimony in violation of "the rule."

Pet. 6-7c, ECF No. 1.

## III.  Rule 5 Statement

Respondent does not believe that the petition is time-barred or successive but does believe that petitioner's federal-constitutional challenge under his tenth ground and "any construed challenge to the sufficiency of the evidence" under his fourth ground are unexhausted. Resp't Answer 5-6, ECF No. 17.

4

Respondent also believes that one or more of the remaining grounds are procedurally barred and/or not cognizable on habeas review. *Id.* at 6.

## IV.  Exhaustion and Procedural Default

Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state on direct appeal or in state post-conviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). The exhaustion requirement is "not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition." *Reed v. Stephens*, 739 F.3d 753, 780 (5th Cir. 2014) (quoting *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003)). In Texas, the highest state court for criminal matters is the Texas Court of Criminal Appeals. *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985). Therefore, a Texas prisoner may typically satisfy the exhaustion requirement by presenting both the factual and legal substance of a claim to

5

the Texas Court of Criminal Appeals in either a petition for
discretionary review or a state habeas post-conviction
proceeding.  *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West 2015);
*Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

Respondent claims petitioner's fifth ground, wherein he
claims there was no evidence that he intentionally or knowingly
caused the death of Earl Gratts for remuneration or promise of
remuneration, is not cognizable or is unexhausted and
procedurally barred. Resp't's Answer 22-23, ECF No. 17. Contrary
to respondent's assertion, a true "no evidence" claim is
cognizable on a Texas state habeas application, and the state
habeas court in this case found there was more than some evidence
to support petitioner's conviction for solicitation of capital
murder. Adm. R., WR-81,097-02, 145, ECF No. 12-4; *Ex parte
Barfield,* 697 S.W.2d 420, 421 (Tex. Crim. App. 1985). Therefore,
petitioner's fifth ground is both cognizable and sufficiently
exhausted for purposes of § 2254(b)(1).

Respondent claims petitioner's tenth ground is unexhausted
because, although raised on direct appeal, petitioner did not
raise a federal constitutional claim on the issue. Resp't's
Answer 23-24, ECF No. 17. Having reviewed petitioner's appellate
brief and petition for discretionary review, it appears

6

respondent's assertion is correct. A petitioner does not exhaust
his state court remedies on an issue of his federal
constitutional rights by asserting a violation of his state
constitutional rights or a violation of state rules of criminal
procedure. Consequently, the federal due process argument that
petitioner makes in this court cannot be fairly said to have been
presented to the state courts. *Wilder v. Cockrell,* 274 F.3d 255
(5th Cir. 2001) (internal citations and quotations omitted) (to
satisfy the exhaustion requirement, it is not enough that all the
facts necessary to support the federal claim were before the
state courts or that a somewhat similar state-law claim was made;
indeed, where petitioner advances in federal court an argument
based on a legal theory distinct from that relied upon in the
state court, he has failed to exhaust). Because the state court
was deprived a fair opportunity to consider the merits of the
claim, the claim is unexhausted for purposes of federal habeas
review. *See Martinez v. Johnson,* 255 F.3d 229, 238 (5th Cir.
2001); *Alexander v. Johnson,* 163 F.3d 906, 908-09 (5th Cir.
1998). Under the Texas abuse-of-the-writ doctrine, petitioner
cannot now return to the state courts for purposes of exhausting
the unexhausted claim. TEX. CODE CRIM. PROC. ANN. art. 11.07, §
4(a)-(c). This doctrine represents an adequate state procedural

bar to federal habeas review. *See Nobles v. Johnson,* 127 F.3d 409, 423 (5th Cir. 1997). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, petitioner's tenth claim is unexhausted and procedurally barred from this court's review. *See Smith v. Johnson*, 216 F.3d 521, 523-24 (5th Cir. 2000).

Also, federal habeas review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *Coleman v. Thompson,* 501 U.S. 722, 729 (1991). Respondent asserts petitioner's second ground is procedurally barred because the state habeas court found that the claim could have been raised on direct appeal, but was not, and thus was forfeited. Adm. R., WR-81,097-02, 141-42, ECF No. 12-4. Resp't's Answer 11-12, ECF No. 17. The court agrees. The Texas Court of Criminal Appeals has repeatedly held that claims that could have been raised on direct appeal may not be raised in a state habeas petition. *Ex parte Gardner,* 959 S.W.2d 189, 199-200 (Tex. Crim. App. 1998). Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent

8

and adequate state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729, (1991); *Johnson v. Puckett*, 176 F.3d 809, 823 (5th Cir. 1999); *Fisher v. State*, 169 F.3d 295, 300 (5th Cir. 1999). The state court clearly relied upon a firmly established and regularly followed state procedural rule to deny petitioner's claim that, in turn, represents an adequate state procedural bar to federal habeas review. *Ex parte Gardner*, 959 at 199. *See also Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (holding "the Great Writ should not be used to litigate matters which should have been raised on appeal"). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, petitioner's second ground is procedurally barred from the court's review.

### V.   Discussion

#### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision

9

that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies a federal claim in a state habeas corpus application without written order, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to

the contrary." *Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013)

(quoting *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011)). With

these principles in mind, the court addresses the remainder of

petitioner's claims.

### (1) Harsh Sentence

Under his first ground, petitioner claims that in violation

of his right to due process and a fair trial his life sentence

for his conviction for solicitation of capital murder is

"extremely disproportional" with the "no evidence case" offered

by the state and the three-year sentence received by his co-

defendant, Roderick Young. Pet. 6a, ECF No. 1. The state habeas

court entered the following factual findings on the issue:

> 6. Applicant was convicted by a jury of one court of
> first degree murder, one count of first degree
> solicitation of capital murder and one count of
> third degree unlawful possession of a firearm
> enhanced by two prior, sequential felony
> convictions.

> 7. Evidence at trial demonstrated that Applicant
> hired the shooter, Roderick Young, to kill Dwayne
> Gratts and that Young killed the victim instead.

> 8. The jury was charged on the law of the parties.

> 9. There was evidence at trial that Applicant caused
> the death of the victim by hiring Roderick Young
> to kill Dwayne Gratts and he was criminally
> responsible for Young killing the victim instead.

> 10. There was more than some evidence that Applicant

11

        committed the offense of murder as alleged in
        Count II of the Indictment.

11.    There was evidence at trial that Applicant hired
        Roderick Young to commit capital murder.

12.    There was more than some evidence that Applicant
        committed the offense of solicitation of capital
        murder.

13.    The Second Court of Appeals already determined
        that the evidence was factually sufficient to
        support Applicant's conviction for unlawful
        possession of a firearm.

14.    There was more than some evidence to support
        Applicant's convictions.

Adm. R., WR-81,097-02 130-31, ECF No. 12-4 (citations to case law and the record omitted).

Based on its findings, and applying relevant Supreme Court precedent and state law, the state court entered the following legal conclusions:

3.    Traditionally, if a punishment falls within the
      range of punishment determined by the Texas
      Legislature to be appropriate for a particular
      offense, then the sentence is not excessive.

4.    Murder is a first degree felony.

5.    Solicitation of capital murder is a first degree
      felony.

6.    The range of punishment for a first degree felony
      offense is 5-99 years, or life.

7.    The punishment range for a third degree felony,
      enhanced by two prior, sequential felony

> convictions, is twenty-five years to ninety-nine years, or life.

8.  Applicant's sentence of confinement for life falls within the range of punishment.

9.  Applicant has failed to prove that his sentence was excessive.

10. The following factors are considered when determining whether a sentence is disproportionate: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; (3) the sentences imposed for commission of the same crime in other jurisdictions.

11. The court must conclude that the sentence is grossly disproportionate to the offense before considering the two remaining factors.

12. Applicant has failed to prove that his sentence was grossly disproportionate to the offense.

13. Applicant has failed to prove that he received a harsh sentence.

*Id.* at 140-41 (citations omitted).

The state courts' determination comports with the Supreme Court decision in *Solem v. Helm,* 463 U.S. 277, 292 (1983). Petitioner is not entitled to relief under his first ground.

### (3) Perjured Testimony

Under his third ground, petitioner claims that his right to due process and a fair trial was violated by the prosecutor's knowing use of perjured testimony to obtain his convictions. Pet.

13

6(c), ECF No. 1. Specifically, petitioner complains of the
prosecutor's remark during closing argument that, "He drops him
off. Roderick Young walks down that street and he shoots the
wrong dude." *Id.*; Adm. R., Reporter's R., vol. 5, 209, ECF No.
11-9. According to petitioner, the prosecutor knew that Young was
not the shooter because—

> she gave a statement to the Star-Telegram Newspaper in
> Fort Worth testifying that "during Moffett's trial" she
> knew from Dewayne [sic] Gratts' description that "Young
> is not" the gunman in this case. A matter testified to
> by Dewayne [sic] Gratts before her closing argument in
> guilt, and this was used to prove an element of the
> offense and therefore, is "material".

Pet. 6c, ECF No. 1.[2]

---

[2]The newspaper article, entitled "Man gets 3 years for murder-for-hire
plan," states:

> A 28-year-old man has been sentenced to three years in
> prison for his role in a botched murder-for-hire scheme that left
> the wrong man dead.
> Roderick Young, who was represented by Ernie Bates, reached
> a plea bargain this week and pleaded guilty to solicitation of
> murder for his part in the death of Earl Gratts, the brother of
> the man who had been ordered killed.
> Young pleaded guilty less than two weeks after a jury
> sentenced his co-defendant, Curtis Moffett, 35, to life in prison.
> Authorities said Moffett, a known drug dealer in the Como
> neighborhood, hired Young as a hit man after someone broke into
> Moffett's apartment, which was used to store cash and drugs.
> Moffett had been feuding with Dwaine [sic] Gratts and suspected
> that he was behind the burglary.
> On Dec. 4, 3005, officials said, Moffett dropped the gunman
> off at Gratts' house, in the 5400 block of Carver Drive.
> Dwaine [sic] Gratts was sitting in a car with his brother,
> Earl, and Dwaine [sic] Gratts' brother-in-law when a man
> approached. After Earl Gratts got out and asked the man what he
> wanted, he was fatally shot.
> Young and Moffett were eventually arrested and charged.

The state habeas court found that the prosecutor's "closing argument is not evidence," that the prosecutor did not commit perjury during closing argument, and that petitioner presented no evidence to support his claim that perjured testimony was presented at trial. Adm. R., WR-81,097-02 131, ECF No. 12-4. Based on its findings, the court concluded that petitioner failed to prove that the prosecutor used perjured or false evidence. *Id.* at 142.

The state court's determination of the issue is not contrary to or an unreasonable application of Supreme Court law on the issue. Indeed, closing arguments are not evidence. Even if there was some risk of prejudice, it is the type that can be cured with proper instructions, which were given here. *Zafiro v. United States,* 506 U.S. 534, 540-41 (1993). A jury is "presumed to follow their instructions." *Richardson v. Marsh,* 481 U.S. 200, 211 (1987). Petitioner is not entitled to relief under his third

---

Prosecutor Sheila Wynn said she offered Young the three-year deal because during Moffett's trial this month, it was unclear whether Young was the shooter. Wynn said that Young was definitely part of the agreement to kill Dwaine [sic] Gratts but that witnesses described the gunman as tall and skinny, which Young is not.

She said the victim's family understands the problems with the case against Young.

"Obviously, I would have liked more [prison time], but I felt like it was a good plea bargain," Wynn said.

*Id.*, Ex. A.

ground.

**(4), (6), (7), (8), and (9) Ineffective Assistance of Counsel**

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington.* 466 U.S. at 668. To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id*. at 688.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id*. at 689. Where a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was

16

contrary to or involved an unreasonable application of the *Strickland* standard in light of the state court record. *Harrington,* 562 U.S. at 100-01 (quoting *Williams,* 529 U.S. at 410); *Bell v. Cone,* 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Petitioner claims his trial counsel, Ray Jackson, was ineffective by failing to—

a)   interview and prepare to cross-examine state witness Pauline Choice;

b)   request a limiting instruction with respect to evidence "he open[ed] the door to" and improperly elicited from Pauline Choice regarding petitioner's "uncharged acts" during cross-examination;

c)   protect his right of confrontation and cross-examination by objecting on hearsay grounds to Choice's testimony regarding what she heard petitioner tell Young;

d)   call Roderick Young as a defense witness;

e)   request a defense instruction under Texas Penal Code § 15.03(b);

f)   object to the prosecutor's knowing use of perjured testimony;

17

g)    conduct a pretrial investigation, including
      failing to interview state witnesses and interview
      and call True Watkins, Pauline Choice's mother,
      and alibi witnesses Roderick Young and Nathan
      Baldwin; visit the crime scene; pursue leads on
      possible eyewitnesses; and request a continuance
      to adequately prepare to defend against
      "additional charges";

h)    offer favorable and exculpatory evidence that Earl
      Gratts had a gun and that while under the
      influence of drugs Earl Gratts provoked the
      shooting; and

i)    object to the jury's failure to follow the law as
      instructed by finding him guilty of solicitation
      of capital murder but acquitting him of capital
      murder.

Pet. 6d, 6f-6g, 7b, ECF No. 1.

Petitioner raised his ineffective-assistance claims in his

state habeas applications and presented evidentiary support,

including an affidavit from Roderick Young denying any

involvement on his or petitioner's part in the "conspiracy to

commit murder." Adm. R., SH02 WR-81,-097-02, 21, ECF No. 12-4.

Trial counsel, who tried the case in its entirety save for the

reading of the verdict, responded to petitioner's allegations,

via affidavit, as follows:

> With The Court's permission . . . [other counsel]
> was allowed to stand in for me during the reading of
> the verdict. However, during the case in chief, Affiant
> represented Applicant to the best of his ability.
> Affiant interviewed each and every witness that Affiant
> knew about and called every witness that was available

that could have helped exonerate applicant. Affiant
cross examined every witness that the State called and
created enough doubt that applicant was in fact
exonerated on one count of Capital Murder. There was
nothing else that Affiant could have done within the
rules of procedure that affiant didn't do on behalf of
the Applicant in his trial regarding cause number
1070445R.

Affiant contends that he was not ineffective by
any stretch of the imagination and in fact went over
and above in locating and finding witnesses on
Applicant's behalf. Even though Applicant's girlfriend
who testified against him hurt his case, there was
absolutely nothing that could have [been] done to help
Applicant in that she swore under oath that her
testimony was truthful.

Affiant further contends that all of Applicant's
allegations against him are erroneous. Affiant knew
that the proper time to file a Motion for New Trial is
"before, but no later than 30 days after, the day when
the trial court imposes or suspends sentence in open
court.

Adm. R., SH4-WR-80,097-02, 48-49, ECF No. 12-4 (citation

omitted).

Based on counsel's affidavit, the documentary evidence and

his own recollection of the trial proceedings, the state habeas

judge adopted the state's proposed findings of fact and

conclusions of law. Specifically, the state habeas court found:

> 37.  Hon. Jackson cross-examined every State's
>      witness.'
>
> 38.  Hon. Jackson did not interview some of the State's
>      witnesses prior to trial.

39.  Applicant presents no evidence, or allegation, that interviewing the State's witnesses before trial would have changed the outcome of the proceeding.

40.  Counsel was using Pauline Choice's handwritten statement to show that her stories had been inconsistent.

41.  Pauline answered non-responsively that she was "forced to" sign the document.

42.  Counsel attempted to show that the State's main witness, Pauline, gave a notarized statement that Applicant was not involved in the murder.

43.  Counsel advised the Court that he had no objection to the jury hearing Pauline testify that she made the statement under duress.

44.  Pauline's statement that Applicant was not involved in the murder was admitted into evidence.

45.  Counsel cross-examined Pauline on the fact that she offered to change her story if someone paid her.

46.  Pauline testified that a Pee-Wee forced her to sign the affidavit.

47.  Applicant does not explain to what limiting instruction counsel should have requested.

48.  Even though Pauline then testified that she was forced to sign the statement, counsel's decision to cross-examine Pauline on her statement was the result of reasonable trial strategy.

49.  Section 15.03(b) of the Texas Penal Code provides that the testimony of the person solicited is not sufficient to sustain a conviction.

50.  The person solicited, Roderick Young, did not

testify; therefore, Applicant was not entitled to a section 15.03(b) defense instruction.

51. Counsel properly did not request a section 15.03(b) defense instruction.

52. Counsel properly did not object to Pauline's testimony regarding what Applicant said to Roderick Young on the basis of the confrontation clause.

53. Applicant's seventh ground for relief is that counsel failed to conduct a pre-trial investigation.

54. Applicant presents no evidence to support his claim that counsel failed to conduct a pre-trial investigation.

55. Applicant presents no evidence to support his claim that counsel failed to visit the crime scene.

56. Applicant presents no evidence to support his claim that counsel failed to seek out potential eyewitnesses and fact witnesses to the offenses.

57. Applicant presents no affidavit from True Watkins showing that counsel failed to interview her or that her testimony would have been beneficial to his case.

58. This Court does not find Roderick Young's statement credible that he was willing to testify on Applicant's behalf.

59. This Court does not find Roderick Young's statement credible that he made numerous attempts to contact Applicant's counsel and that counsel refused to speak to him.

60. There is no evidence that the jury would have found Roderick Young a credible alibi witness.

21

61. It is reasonable that counsel did not call Roderick Young to testify because the jury would not have found him credible.

62. Counsel's decision not to interview Roderick Young was the result of reasonable trial strategy.

63. Applicant presents no evidence, or affidavit, that Nathaniel Baldwin was his alibi witness.

64. Applicant presents no evidence that the outcome of the proceeding would have been different had counsel called more witnesses.

65. Hon. Jackson attempted to locate and find witnesses on Applicant's behalf.

66. Hon. Jackson interviewed each defense witness he knew about.

67. Hon Jackson called every witness that was available that he believed could have exonerated Applicant.

68. Hon. Jackson cross-examined every State's witness.

69. Hon. Jackson did not interview some of the State's witnesses prior to trial.

70. Applicant presents no evidence, or allegation, that interviewing the State's witnesses before trial would have changed the outcome of the proceeding.

71. Applicant was acquitted of capital murder.

72. Hon. Jackson is not aware of anything else he could have done for Applicant.

73. Hon. Jackson feels he did the best he could do for Applicant.

74. There is no evidence that the outcome [of] the proceeding would have been different had counsel requested a continuance.

75. Applicant eighth ground for relief is that counsel should have presented evidence that the victim had a gun.

76. Counsel's defense argument was that there was no robbery and Applicant was not involved in the murder.

77. Counsel argued that neither Roderick Young nor Applicant shot the victim.

78. Because the defense was that neither Applicant nor Roderick Young, at Applicant's request, shot the victim, the decision to not argue self-defense was the result of reasonable trial strategy.

79. Applicant's ninth ground for relief is that counsel failed to object to the jury's misapplication of the law when finding him guilty of Count III but acquitting him of Count I.

80. Count I of the indictment alleged that Applicant paid to have the victim killed.

81. Count III alleged that Applicant hired Roderick Young to commit capital murder.

82. The jury sent a note out asking if Count I required that the act for which the person was employed for be committed.

83. The trial court answer that the jury must find that "the act does have to be carried out by the employed person listed in the indictment."

84. The jury found that Applicant hired Roderick Young to commit capital murder but that Applicant was not guilty of capital murder because the intended victim was not killed.

23

85. Counsel properly did not object to the jury's finding Applicant guilty of Count III after acquitting him of Count I.

86. Applicant's thirteenth ground for relief is that counsel failed to object to the State's arguments and evidence that Applicant was a drug dealer.

87. Counsel requested that the State be prohibited from arguing and presenting evidence that Applicant was a drug dealer on the bases that (1) it was an extraneous offense, (2) notice was late, (3) it is inadmissible unless Applicant testifies or the door is opened, (4) it was more prejudicial than probative, and (5) the State could have charged Applicant as a drug dealer if they intended that issue be made a part of the case.

88. This Court denied the request and let the State go into Applicant's status as a drug dealer but granted counsel a running objection.

89. Counsel's argument outside the jury that Applicant's status as a drug dealer was based on reasonable trial strategy.

90. The State argued during opening statement that Applicant was a drug dealer but said "I don't' tell you that because I want you to think that he's a bad person, but I want you to understand the frame work in which this murder took place."

91. The jury was charged as follows:

"You are to decide whether the State has proved beyond a reasonable doubt that the defendant is guilty of the crime charged. The defendant is not on trial for any act, conduct, or offense not alleged in the indictment.

"you are instructed that if there is testimony before you regarding the defendant

having committed offenses, wrongs, or acts
other than the offense charged in the
indictment in this case, now on trial before
you, you cannot consider said testimony for
any purpose unless you find and believe
beyond a reasonable doubt that the defendant
[committed] such conduct, if any were
committed, and even then you may only the
same in determining the motive, or intent for
this defendant now on trial before you and
for no other purpose."

92.  Counsel's decision to have a running objection and
     to have the court give the jury a limiting
     instruction at the end was the result of
     reasonable trial strategy.

93.  There is no evidence, or argument, that the jury
     convicted Applicant of murder, solicitation to
     commit capital murder, and unlawful possession of
     a firearm by a felon because Applicant was a drug
     dealer and not based on the facts of this case.

94.  There is no evidence that a reasonable likelihood
     exists that the outcome of the proceeding would
     have been different but for the alleged
     misconduct.

95.  There is no evidence of harm.

Adm. R. 132-38, ECF No. 12-4 (citations to the record omitted).

    Based on its factual findings, the state court concluded

petitioner had failed to prove that counsel's representation was

deficient or that a reasonable probability exists that but for

counsel's acts or omissions the result of the proceeding would

have been different. *Id.* at 143-45. In turn, the Texas Court of

Criminal Appeals rejected petitioner's claims on the habeas

court's findings.

Deferring to the state habeas court's findings in the absence of clear and convincing evidence in rebuttal and having independently reviewed petitioner's claims in conjunction with the record, the state courts' application of *Strickland* was not unreasonable. Petitioner's claims are conclusory, with no legal and/or evidentiary basis, refuted by the record, involve state evidentiary rulings or other matters of state law, or involve strategic and tactical decisions made by counsel, all of which generally do not entitle a state Petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for post-conviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or objections); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *United States v. Green,* 882 F.2d 999, 1003 (5th Cir.1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with

26

specificity what the investigation would have revealed and how it would have altered the outcome of the trial"); *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (claims "based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and . . . speculations as to what these witnesses would have testified is too uncertain"). A habeas petitioner must demonstrate that counsel's performance, in light of the entire proceeding, was so inadequate as to render his trial unfair. *Washington v. Watkins,* 655 F.2d 1346 (5th Cir.1981). This, petitioner has not accomplished. Petitioner is not entitled to relief under grounds (4), (6), (7), (8) or (9).

*(5) No Evidence*

Under his fifth ground, petitioner claims there was no evidence that he committed solicitation of capital murder–*i.e.*, intentionally or knowingly caused the death of Earl Gratts for remuneration or promise of remuneration. Pet. 6e, ECF No. 1. The state habeas court found that evidence at trial demonstrated that petitioner hired Roderick Young to kill Dwayne Gratts and that Young killed Earl instead, that the jury was charged on the law of parties, and that there was evidence at trial that petitioner hired Young to commit capital murder. The court concluded that

there was more than some evidence that petitioner committed the offense of solicitation of capital murder. Adm. R., SH4-WR-80,097-02, 138, ECF No. 12-4.

A state prisoner's no-evidence claim is treated the same as a claim of insufficiency of the evidence. *Gibson v. Collins,* 947 F.2d 780, 782 (5th Cir. 1991). Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia,* 443 U.S. 307 (1979). In *Jackson,* the Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. To determine whether the evidence is sufficient to support a state criminal conviction, a federal habeas court looks to state law for the substantive elements of the relevant criminal offense. *Id.* at 324 n.16; *Dupuy v. Cain,* 201 F.3d 582, 589 (5th Cir. 2000).

Additionally, under *Jackson,* the assessment of the credibility of witnesses is generally beyond the scope of review. *Schlup v. Delo,* 513 U.S. 298, 330 (1995). Determining the weight

28

and credibility of the evidence is within the sole province of
the jury. *United States v. Martinez,* 975 F.2d 159, 161 (5th Cir.
1992). Courts view any required credibility determinations in the
light most favorable to the guilty verdict. *United States v.
Wise,* 221 F.3d 140, 154 (5th Cir. 2000). They do not second-guess
the weight or credibility given the evidence. *United States v.
Ramos-Garcia,* 184 F.3d 463, 465 (5th Cir. 1999). Finally, where a
state appellate court has conducted a thoughtful review of the
evidence, its determination is entitled to great deference.
*Callins v. Collins,* 998 F.2d 269, 276 (5th Cir. 1993).

Under § 15.03(a) of the Texas Penal Code,

> A person commits an offense if, with intent that a
> capital felony or felony of the first degree be
> committed, he requests, commands, or attempts to induce
> another to engage in specific conduct that, under the
> circumstances surrounding his conduct as the actor
> believes them to be, would constitute the felony or
> make the other a party to its commission.

TEX. PENAL CODE ANN. § 15.03(a) (West 2011).

Pauline Choice's testimony, which the jury clearly believed
in this respect, was sufficient evidence under the *Jackson*
standard to find that petitioner sought and paid for Young to
kill Dwayne Gratts. As a matter of state law, intent with regard
to a defendant's intended victim transfers to the actual victim.
*See* TEX. PEN. CODE ANN. § 6.04(b)(2) (West 2011); *Forest v. State,*

29

989 S.W.2d 365, 368 (Tex. Crim. App. 1999); *Harrell v. State,* 659 S.W.2d 825, 827 (Tex. Crim. App. 1983). The state prosecuted petitioner for solicitation of capital murder under and a theory of transferred intent. The state was therefore not required to prove that petitioner intended to cause Earl Gratts's death. *Granger v. State,* No. AP-77,017, 2015 WL 1875907, at *3 (Tex. Crim. App. Apr. 22, 2015). Petitioner is not entitled to relief under ground (5).

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.  For the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied.

SIGNED February ___*17*___, 2016.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE